**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PPM AMERICA, INC. in its capacity as agent for JACKSON NATIONAL LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 19 C 5845 |
| VISION SERVICE PLAN, | ) ) | Judge Charles P. Kocoras |
| Defendant. | ) ) | |

## ORDER

Before the Court is Defendant Vision Service Plan's ("VSP or The Company") motion to dismiss Plaintiff PPM America, Inc.'s ("PPM") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies the motion.

## STATEMENT

For purposes of this motion, the Court accepts as true the following facts from the complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in PPM's favor. *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014).

Plaintiff PPM is the agent of Jackson National Life Insurance Company ("Jackson National"), a Michigan corporation with its principal place of business in

Lansing, Michigan. Defendant VSP is a California not-for-profit corporation with its principal place of business in Rancho Cordova, California.

On December 20, 2018, VSP entered into a Note Purchase Agreement ("NPA")[1] with Jackson National and six other entities ("the Purchasers"). In the NPA, VSP pledged to authorize and deliver $25 million in 4.30% Senior Notes ("the Notes") payable to PPM as attorney-in-fact on behalf of Jackson National, and an additional $175 million in Notes to the other purchasers. The NPA established a closing date of August 20, 2019, which was to occur in Chicago, Illinois at 8:00 a.m.

Prior to August 20, 2019, VSP repudiated its obligation to tender the Notes to Jackson National. PPM, on behalf of Jackson National, responded by announcing that it did not agree to the termination of the NPA and that Jackson National stood ready to fulfill its obligations under the NPA. On August 20, 2019, Jackson National remained ready to close with VSP and take delivery of the Notes. However, VSP did not hold the closing on August 20, 2019, and did not contact PPM or Jackson National to reschedule the closing to an alternate date, as permitted by the NPA. To date, VSP has not tendered the Notes to Jackson National.

Based on these events, PPM filed its complaint on August 30, 2019, alleging a breach of contract claim against VSP. On October 29, 2019, VSP filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1] The parties agree that New York law governs any disputes arising out of the NPA.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations but must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

VSP moves the Court to dismiss PPM's complaint on two grounds: (1) under the terms of the NPA, VSP was entitled to *all* of the Purchasers buying their respective amounts of Notes before VSP was obligated to close and tender the Notes to the Purchasers; and (2) there was a failure of consideration that excused VSP's obligation to perform under the NPA. The Court addresses each argument in turn.

**I. Obligations Under the NPA**

Under New York law, "when the terms of a written contract are clear and unambiguous, the intent of the parties must be found therein." *Nichols v. Nichols*, 119 N.E.2d 351, 353 (1954). However, it is the province of the Court to determine "whether or not a contract provision is ambiguous." *Van Wagner Advert. Corp. v. S & M Enterprises*, 492 N.E.2d 756, 758 (1986). "A contract is ambiguous if the language used lacks a definite and precise meaning, and there is a reasonable basis for a difference of opinion." *Williams v. Vill. of Endicott*, 91 A.D.3d 1160, 1162 (2012). "In the context of a motion to dismiss, if the contract's language is ambiguous, then the motion must be denied to permit the parties to discover and present extrinsic evidence of the parties' intent." *Vectron Int'l, Inc. v. Corning Oak Holding, Inc.*, 106 A.D.3d 1164, 1165 (2013).

Here, Section 1 of the NPA provides, "The Company will authorize the issue and sale of $200,000,000 aggregate principal amount of its 4.30% Senior Notes due August 20, 2029." Section 2 of the NPA states:

> Subject to the terms and conditions of the Agreement, the Company will issue and sell to each Purchaser and each Purchaser will purchase from the Company … Notes in the principal amount specified opposite such Purchaser's name in the Purchaser Schedule at the purchase price of 100% of the principal amount thereof. The Purchasers' obligations hereunder are several and not joint obligations and no Purchaser shall have any liability to any Person for the performance or non-performance of any obligation by any other Purchaser hereunder.

The disagreement in this case turns on the definition of the word "each" in Section 2 and what obligations arose from the use of that term.

VSP construes the phrase "each Purchaser will purchase from the Company" to require "all, every one of the Purchasers, or every individual Purchaser, to buy the Notes that it agreed to Purchase under the NPA." 1:19-cv-5845, Dkt. 16, Pg. 8. VSP maintains that the foundation of the agreement was for VSP to obtain $200 million in financing, and VSP was not required to close if less than that amount was purchased. VSP contends that the provision in Section 2 regarding the Purchasers' several obligations was only "intended to protect each of the Purchasers [inasmuch] as no Purchaser could be compelled by the Company to buy more Notes than it was required to purchase according to the Purchaser Schedule due to the failure of another Purchaser to fulfill its obligations." *Id.* at 11. VSP asserts that this provision did "not allow Purchasers to unilaterally amend the agreement by forcing VSP to close on a lesser amount than negotiated and agreed to in the NPA." *Id.* In other words, this provision was only a protection for the Purchasers, not a clause creating individual obligations for VSP.

PPM construes the NPA the opposite way, arguing that VSP's "obligation to the Purchasers is several by its very nature, as it owed different performances (i.e. to sell different values of Notes) to each Purchaser." 1:19-cv-5845, Dkt. 19, Pg. 5. PPM asserts that VSP mistakenly interprets the word "each" to mean every Purchaser collectively, rather than every Purchaser individually. While the NPA does not contain

a definition for the term "each," PPM points to several contract provisions that indicate the term was to be construed individually. For example, the NPA uses singular pronouns to refer to "each Purchaser" and their rights under the agreement. PPM also notes that "the NPA contains no language indicating that it is binding only if all of the prospective purchasers collectively subscribe to the entire $200 million Note issue." *Id.* at 11.

To resolve the competing interpretations of the term "each," the Court first looks to the dictionary definition of the word. *Vill. of Chestnut Ridge v. Howard*, 92 N.Y.2d 718, 723 (1999) ("… [D]ictionary definitions have traditionally been regarded as useful guideposts in ascertaining the meaning of a word or phrase."). *Black's Law Dictionary* defines the term "each" as "a distributive adjective pronoun, which denotes or refers to every one of the persons or things mentioned; every one of two or more persons or things, composing the whole, separately considered." *Black's Law Dictionary* (2d ed. 1910). The definition further states, "[t]he effect of this word … is to create a several obligation." *Id.*

New York courts have interpreted the term "each" in accordance with this definition, construing the word to recognize a group of individual rights or obligations. For example, in *In re Turner's Will*, the Court of Appeals of New York interpreted a will clause stating, "…and to each of the children of my brother, George Turner, one share, to be divided equally among my said nieces and nephews share and share alike." 208 N.Y. 261, 263–64 (1913). The Court of Appeals held that each child was entitled

6

to one individual share under the will, rather than to split one share amongst them collectively. *Id.* at 265–67. In support of their interpretation of the term "each," the Court of Appeals cited to a Pennsylvania Supreme Court case that found, "by the use of the word 'each' he did in effect designate them all individually as plainly as if he has inserted their several names." *Id.* at 267 (quoting *In re Penney's Estate*, 159 Pa. 246, 348 (1893)).

Similarly, in *Spillman v. Murphy*, the United States District Court for the Western District of New York interpreted the federal removal statute that says, "each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons … to file the notice of removal." 2016 WL 11268703, *2 (W.D.N.Y. 2016). The District Court held that the statute gave each individual defendant the opportunity to remove a case filed in state court, regardless of whether they had previously consented to another defendant's prior Notice of Removal. The District Court reasoned that "[t]he word 'each' means 'every one,' not 'every one except those who have previously consented.'" *Id.* In other words, the defendants' statutory rights were not to be considered collectively for removal purposes, but rather as individual members of a group.

While the Court acknowledges the string of authorities VSP cites in support of its interpretation, the Court must apply the interpretation adopted under New York law, per the parties' agreement. Accordingly, the Court agrees with PPM that the NPA's

7

use of the term "each" created a group of distinct obligations between the Purchasers and VSP. As such, VSP's motion to dismiss on this basis is denied.

## II. Failure of Consideration

Alternatively, VSP urges the Court to dismiss the complaint based on failure of consideration. Typically, courts will not grant a motion to dismiss based on an affirmative defense, such as failure of consideration. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). A dismissal based on an affirmative defense "is appropriate only where the plaintiff pleads himself out of court by admitting all the ingredients of an impenetrable defense." *Siegel v. General Star Mgmt. Co.*, 2007 WL 1239058, *2 (N.D. Ill. 2007) (internal quotation omitted).

"Failure of consideration is a generic expression covering every case where an exchange of values is to be made and the exchange does not take place, whether because of the fault of a party or without his fault." *Hadden v. Consol. Edison Co. of New York, Inc.*, 312 N.E. 2d 445, 448 n.6 (1974). For a party to be discharged of its obligations due to failure of consideration, "the reciprocal performance rendered valueless must be the foundation of the contract" such that "without it the transaction would make little sense." *City of New York v. Long Island Airports Limousine Serv. Corp.*, 96 A.D.2d 998, 1000 (1983), *aff'd*, 466 N.E.2d 153 (1984). Furthermore, "the circumstance destroying the consideration must be one which could not have been anticipated by the parties and, therefore, provided for specifically in the agreement." *Id.*

VSP contends that "other Purchasers' decision not to purchase their required Notes excused VSP's obligation to perform under the NPA" because that was the consideration for the agreement. 1:19-cv-5845, Dkt. 16, Pg. 13. Essentially, VSP maintains that the foundation of the NPA was the $200 million in financing, and Jackson National's $25 million portion is insufficient consideration for the entire NPA. PPM counters that the foundation of the NPA was the individual purchases of the Notes as laid out in the Purchaser Schedule, and Jackson National stood ready to make its purchase on the closing date. Based on our interpretation of the obligations under the NPA, the Court agrees with PPM. Given that PPM stood ready to make its individual purchase, there was sufficient consideration for the agreement. Moreover, the NPA anticipated the situation where a Purchaser no longer wanted to make its designated purchase, allowing amendment of the Purchase Schedule and noting that liability would not extend to any other Purchaser for another Purchaser's failure. Therefore, VSP cannot clearly establish the affirmative defense of failure of consideration, and the Court denies its motion to dismiss on this basis.

## **CONCLUSION**

For the aforementioned reasons, the Court denies VSP's motion to dismiss. It is so ordered.

Dated: 2/5/2020

*Charles P. Kocoras*

Charles P. Kocoras
United States District Judge